No. 25-11280

# In the United States Court of Appeals for the Fifth Circuit

IN THE MATTER OF JRJR33, INC., *Debtor*,

ROBERT YAQUINTO, IN HIS CAPACITY AS CHAPTER 7
TRUSTEE OF JRJR33, INC.,
*Appellant*,

v.

CNA INSURANCE COMPANIES
D/B/A CONTINENTAL CASUALTY COMPANY,
*Appellee*.

On Appeal from the United States District Court
for the Northern District of Texas, Dallas Division
Case No. 3:24-CV-2728

## APPELLANT'S OPENING BRIEF

| | |
|---|---|
| Kevin D. McCullough | Mazin A. Sbaiti |
| ROCHELLE MCCULLOUGH, LLP | Griffin S. Rubin |
| 325 N. St. Paul Street | SBAITI & COMPANY PLLC |
| Suite 4500 | 3102 Maple Avenue |
| Dallas, Texas 75201 | Suite 400 |
| (214) 953-0182 | Dallas, Texas 75201 |
| | (214) 432-2899 |
| | mas@sbaitilaw.com |

*Counsel for Appellant Robert Yaquinto,*
*in his Capacity as Chapter 7 Trustee of JRjr33, Inc.*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| | |
|---|---|
| **Appellant:** | Robert Yaquinto, in his Capacity as Chapter 7 Trustee of JRjr33, Inc. |
| **Counsel for Appellants:** | SBAITI & COMPANY PLLC<br>Mazin A. Sbaiti (mas@sbaitilaw.com)<br>Griffin S. Rubin (gsr@sbaitilaw.com)<br><br>ROCHELLE MCCULLOUGH, LLP<br>Kevin D. McCullough (kdm@romclaw.com) |
| **Appellee:** | CNA Insurance Companies d/b/a Continental Casualty Company |
| **Counsel for Appellee:** | SPENCER FANE LLP<br>David H. Timmins (dtimmins@spencerfane.com) |

/s/ *Mazin A. Sbaiti*
Mazin A. Sbaiti

*Counsel of Record for Appellant*
*Robert Yaquinto, as Chapter 7 Trustee*
*of JRjr33, Inc.*

i

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument as they believe it will significantly aid the decisional process in this case. There are strong grounds for reversing the judgment below, and the questions presented are likely to arise in future cases.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS..............................................i

STATEMENT REGARDING ORAL ARGUMENT.....................................ii

JURISDICTIONAL STATEMENT ........................................................ 1

STATEMENT OF THE ISSUES ........................................................... 2

INTRODUCTION ............................................................................. 4

STATEMENT OF THE CASE............................................................... 5

SUMMARY OF THE ARGUMENT.......................................................... 10

STANDARD OF REVIEW ................................................................... 13

ARGUMENT ................................................................................... 14

I.   The Settlement Was Not Excluded as a Loss Covered by the Policy's Plain Text ....................................................................... 14

    a.   The Incorrect Standard Was Applied When Construing the Policy and Deciding Coverage for the Duty to Indemnify ........................................................................ 15

    b.   The Term "Penalties . . . Imposed" Reasonably Means Statutory Sums Paid to a Government Entity ................... 16

    c.   The Trustee's Reading Prevails Even in the Face of an Alternative Reading ........................................................ 22

    d.   The Exclusion Language Was Erroneously Construed...... 24

II.  Even If CNA's Reading of "Penalties" Were Correct, a Fact Question Remained That Could Not Be Decided at the Pleading Stage ............................................................................. 27

III. If This Court Finds the Coverage Determination Was Erroneously Made, the *Stowers* Claim Survives ........................ 31

IV.  The Policy Is an Executory Contract, and Therefore Assignable, Under § 365(f) of the Bankruptcy Code ................... 35

V.   Amendment Should Have Been Allowed in the Alternative....... 42

CONCLUSION.................................................................................... 43

CERTIFICATE OF SERVICE .............................................................. 45

CERTIFICATE OF COMPLIANCE ...................................................... 46

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Acara v. Banks,*
　470 F.3d 569 (5th Cir. 2006) ........................................................ 20

*Aldous v. Darwin Nat'l Assurance Co.,*
　851 F.3d 473 (5th Cir. 2017) ..................................................... 41-42

*Am. Nat'l Cnty. Mut. Ins. Co. v. Medina,*
　No. 05-16-01062-CV, 2018 WL 4037357
　(Tex. App.—Dallas Aug. 22, 2018, no pet.) (mem. op.) ................... 42

*Anytime Fitness, L.L.C. v. Thornhill Bros. Fitness, L.L.C.*
　*(In re Thornhill Bros. Fitness, L.L.C.),* 85 F.4th 321
　(5th Cir. 2023) ............................................................................. 36

*Argonaut Ins. Co. v. Falcon V, L.L.C. (In re Falcon V, L.L.C.),*
　44 F.4th 348 (5th Cir. 2022) .................................................... 37, 41

*Ashcroft v. Iqbal,*
　556 U.S. 662 (2009) ..................................................................... 15

*Austin Tr. Co. v. Houren,*
　664 S.W.3d 35 (Tex. 2023) ........................................................... 25

*Balandran v. Safeco Ins. Co. of Am.,*
　972 S.W.2d 738 (Tex. 1998) .......................................................... 23

*Bankdirect Cap. Fin., LLC v. Plasma Fab, LLC,*
　519 S.W.3d 76 (Tex. 2017) ....................................................... 16-17

*Bell Atl. Corp. v. Twombly,*
　550 U.S. 544 (2007) ..................................................................... 15

*Beloit Liquidating Tr. v. United Ins. Co.*,
   287 B.R. 904 (N.D. Ill. 2002)................................................ 40

*Berkley Reg'l Ins. Co. v. Phila. Indem. Ins. Co.*,
   No. 10-CV-362, 2011 WL 9879170
   (W.D. Tex. Apr. 27, 2011).................................................... 35

*Bluestone Nat. Res. II, LLC v. Randle*,
   620 S.W.3d 380, 387 (Tex. 2021) ....................................... 17

*Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*,
   99 F.3d 695 (5th Cir. 1996).........................................*passim*

*Charter Sch. Sols v. Guideone Mut. Ins. Co.*,
   407 F. Supp. 3d 64 (W.D. Tex. 2019) ................................. 38, 41, 42

*Columbia Cas. Co. v. Fed. Press Co. (In re Fed. Press Co.)*,
   104 B.R. 56 (Bankr. N.D. Ind. 1989) .................................. 40

*Crocker v. Navient Sols., L.L.C. (In re Crocker)*,
   941 F.3d 206 (5th Cir. 2019)............................................... 19

*Crowell v. Theodore Bender Acct. (In re Crowell)*,
   138 F.3d 1031 (5th Cir. 1998) ............................................ 14

*Data Specialties, Inc. v. Transcon. Ins. Co.*,
   125 F.3d 909 (5th Cir. 1997)............................................... 38

*D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.*,
   300 S.W.3d 740 (Tex. 2009) ............................................... 31

*Elmen Holdings, L.L.C. v. Martin Marietta Materials, Inc.*,
   86 F.4th 667 (5th Cir. 2023) .............................................. 15

*Erie R.R. v. Tompkins*,
   304 U.S. 64 (1938)............................................................. 41

*Espinal v. City of Houston,*
    96 F.4th 741 (5th Cir. 2024) ............................................................ 15

*Evanston Ins. Co. v. Gene by Gene, Ltd.,*
    155 F. Supp. 3d 706 (S.D. Tex. 2016) ........................................ 21-22

*FDIC v. Mijalis,*
    115 F.3d 1314 (5th Cir. 1994) ........................................................ 27

*Firearms Imp. & Exp. Corp. v. United Capitol Ins. Co.*
    *(In re Firearms Imp. & Exp. Corp.),* 131 B.R. 1009
    (Bankr. S.D. Fla. 1991) ................................................................. 40

*Flagship Credit Corp. v. Indian Harbor Ins. Co.,*
    481 F. App'x 907 (5th Cir. 2012) .................................................*passim*

*Foman v. Davis,*
    371 U.S. 178 (1962) ....................................................................... 43

*G. A. Stowers Furniture Co. v. Am. Indem. Co.,*
    15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved) .......... 15

*George v. SI Grp., Inc.,*
    36 F.4th 611 (5th Cir. 2022) .......................................................... 15

*Gonzalez v. Mid-Continent Cas. Co.,*
    969 F.3d 554 (5th Cir. 2020) .......................................................... 23

*Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.,*
    538 F.3d 365 (5th Cir. 2008) .......................................................... 17

*Greater Hous. P'ship v. Paxton,*
    468 S.W.3d 51 (Tex. 2015) ............................................................. 19

*Guar. Nat'l Ins. Co. v. Greater Kan. City Transp., Inc.,*
    90 B.R. 461 (D. Kan. 1988) ............................................................ 40

*Hodge v. Engleman,*
90 F.4th 840 (5th Cir. 2024) ........................................................ 15

*In re CVA Gen. Contractors, Inc.,*
267 B.R. 773 (Bankr. W.D. Tex. 2001) ........................................ 40

*In re Fed.-Mogul Glob., Inc.,*
385 B.R. 560 (Bankr. D. Del. 2008) ............................................. 40

*In re Greater Kan. City Transp., Inc.,*
71 B.R. 865 (Bankr. D. Kan. 1987) ........................................ 40, 41

*In re Horizon,*
470 S.W.3d 452 (Tex. 2015) ..................................................... 23-24

*In re Placid Oil Co.,*
72 B.R. 135 (Bankr. N.D. Tex. 1987) ........................................... 41

*Kinsale Ins. Co. v. Flyin' Diesel Performance,*
99 F.4th 821 (5th Cir. 2024) ........................................................ 24

*Lagos v. United States,*
584 U.S. 577 (2018) ............................................................... 25, 26

*Linkenhoger v. American Fidelity & Cas. Co.,*
260 S.W.2d 884 (Tex. 1953) ......................................................... 34

*Lopez v. Viegelahn (In re Lopez),*
897 F.3d 663 (5th Cir. 2018) ....................................................... 14

*Lutz v. Portfolio Recovery Assocs., LLC,*
49 F.4th 323 (3d Cir. 2022) ......................................................... 25

*McLane Foodservice, Inc. v. Table Rock Rests., L.L.C.,*
736 F.3d 37 (5th Cir. 2013) ......................................................... 16

*Mission Prod. Holdings v. Tempnology*, LLC,
    587 U.S. 370 (2019) ................................................................ 37

*Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*,
    811 S.W.2d 552 (Tex. 1991) ............................................ 17, 25

*Nat'l Union Fire Ins. Co. v. Puget Plastics Corp.*,
    532 F.3d 398 (5th Cir. 2008) ......................................... 30, 32

*Nautilus Ins. Co. v. Country Oaks Apartments Ltd.*,
    566 F.3d 452 (5th Cir. 2009) ................................................ 24

*NLRB v. Bildisco & Bildisco*,
    465 U.S. 51 (1984) .................................................................. 37

*Pan Am Equities, Inc. v. Lexington Ins. Co.*,
    959 F.3d 671 (5th Cir. 2020) ................................................ 24

*Phila. Indem. Ins. Co. v. Stebbins Five Cos.*,
    No. 3:02-CV-1279, 2002 U.S. Dist. LEXIS 24582
    (N.D. Tex. Dec. 20, 2002) ...................................................... 38

*Phx. Expl. v. Yaquinto (In re Murexco Petrol.)*,
    15 F.3d 60 (5th Cir. 1994) .................................................... 37

*Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*,
    279 S.W.3d 650 (Tex. 2009) .................................................. 31

*Princeton Excess & Surplus Lines Ins. Co. v. A.H.D. Hous., Inc.*,
    84 F.4th 274 (5th Cir. 2023) ................................................ 15

*Ranger Cnty. Mut. Ins. Co. v. Guin*,
    723 S.W.2d 656 (Tex. 1987) .............................................. 33-34

*RPD Holdings, L.L.C. v. Tech Pharm. Servs. (In re Provider Meds, L.L.C.)*,
    907 F.3d 845 (5th Cir. 2018) ......................................... 37, 43

*RSUI Indem. Co. v. Lynd Co.*,
  466 S.W.3d 113 (Tex. 2015) ........................................................ 23

*Spencer v. World Vision, Inc.*,
  633 F.3d 723 (9th Cir. 2011) ...................................................... 27

*State Farm Fire & Cas. Co. v. Reed*,
  873 S.W.2d 698 (Tex. 1993) ........................................................ 16

*Sw. Airlines Co. v. Liberty Ins. Underwriters, Inc.*,
  90 F.4th 847 (5th Cir. 2024) ...................................................... 18

*Tasacom Real Est., LLC v. Associated Indus. Ins. Co.*,
  No. 3:23-CV-1687, 2024 WL 3635519
  (W.D. Tex. Apr. 27, 2011) ...................................................... 25-26

*TIG Ins. Co. v. Woodsboro Farmers Coop.*,
  117 F.4th 715 (5th Cir. 2024) .................................................... 40

*Tex. State Bd. of Exam'rs of Marriage & Family Therapists v.
Tex. Med. Ass'n*,
  511 S.W.3d 28 (Tex. 2017) .......................................................... 18

*United States v. Koutsostamatis*,
  956 F.3d 301 (5th Cir. 2020) ...................................................... 19

*United States Fid. & Guar. Co. v. Goudeau*,
  272 S.W.3d 603 (Tex. 2008) ........................................................ 25

*Van Loon v. U.S. Dep't of the Treasury*,
  122 F.4th 549 (5th Cir. 2024) ...................................................... 19

*Vardeman v. City of Houston*,
  55 F.4th 1045 (5th Cir. 2022) ...................................................... 15

*Westchester Surplus Lines Ins. Co. v. Surfside Resort & Suites, Inc.*
*(In re Surfside Resort & Suites, Inc.)*, 344 B.R. 179
(Bankr. M.D. Fla. 2006) ................................................................ 40

## **Statutes and Rules**

11 U.S.C. § 365(f) ....................................................................... 11, 43

11 U.S.C. § 365(f)(1) ......................................................................... 36

42 U.S.C. § 1320a-7a(f) ...................................................................... 20

42 U.S.C. § 1320d-5(a) ....................................................................... 20

FED. R. EVID. 201............................................................................... 29

TEX. INS. CODE § 554.002 ................................................................... 30

## **Other Authorities**

ANTONIN SCALIA & BRYAN A. GARNER, READING LAW:
THE INTERPRETATION OF LEGAL TEXTS (2012) ...................................... 19

BLACK'S LAW DICTIONARY (12th ed. 2024) ................................. 18, 19-20

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. § 158(a)(1) because it has jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under 28 U.S.C. § 157. This Court has subject-matter jurisdiction under 28 U.S.C. § 158(d)(1) because it has jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under 28 U.S.C. § 158(a).

The district court entered final judgment on November 18, 2025. ROA.619. Appellant timely filed a notice of appeal on November 19, 2025. ROA.620-621.

**STATEMENT OF THE ISSUES**

1.      The insurance policy at issue excludes "civil or criminal fines, penalties, taxes, sanctions or forfeitures" other than civil penalties under HIPAA from the definition of a covered "Loss." While only some of these are payable to private parties, all are payable to the government. Relevant precedent directs courts to apply the noscitur a sociis canon to construe this exclusion language as having the same common denominator— meaning, only moneys payable to a government authority are excluded from coverage; Texas insurance law additionally requires courts to strictly construe policy exclusions against the insurer and adopt any reasonable construction of the policy favoring the insured. Was it error to dismiss the case on the basis that the private "penalties" sought in the underlying suit were excluded by the Policy?

2.      The settlement underlying this case released more than just usury claims—it also released, among other things, all damages claims, equitable claims, and attorney's fees. The Policy expressly covers "settlements" of "Claims" and contains a provision for apportioning indemnity of covered and noncovered portions of a covered settlement. Was

2

it error to dismiss the case based solely on the pleadings when Texas law requires coverage to be based on the evidentiary record?

3.    Under § 365(f) of the Bankruptcy Code, a contract with an anti-assignment clause may be assigned if it is executory at the time the bankruptcy was filed—i.e., if performance under the contract remains due "to some extent" on both sides. The Policy had an anti-assignment clause, but each party had continuing material obligations outstanding at the time the bankruptcy was commenced. Was it error to determine that the insurance policy was not an executory contract and, therefore, not assignable?

3

## INTRODUCTION

This appeal concerns a dispute over an insurance policy. Appellee CNA Insurance Companies failed to accept a reasonable policy-limits demand to settle over $11 million in claims against its insured, Actitech, LP. Actitech then incurred hundreds of thousands of dollars in defense costs, filed for bankruptcy, and paid $2.75 million to settle with the plaintiffs, JRjr33, Inc. and Agel Enterprises, LLC. As part of the settlement approved by the bankruptcy court, Actitech also assigned its *Stowers* claim, as well as its rights and claims under the Policy, to Appellant Robert Yaquinto, Chapter 7 Trustee of JRjr33, Inc., who initiated these proceedings.

The bankruptcy court dismissed the case on the pleadings, holding that (i) because the policy excluded coverage for "penalties," it necessarily excluded coverage for usury claims, and (ii) the Trustee lacked standing because the insurance policy contained a non-assignability clause and was not executory, making it non-assignable under § 365(f) of the Bankruptcy Code. As well, leave to amend the complaint to include the covered damages claims and other facts necessary to cure alleged deficiencies was denied.

4

These were error. The insurance policy excluded "penalties . . . imposed" on an insured. Applying *noscitur a sociis* evinces that the lowest common denominator in the exclusion list means that payments exclusively to a government entity were excluded. Not only that, but any "settlement" is expressly a covered loss, and Actitech's settlement payment was in exchange for releases of damages and equitable claims in addition to those that might result in a penalty. It therefore cannot be said that the entire settlement was for a noncovered loss. Further, once coverage was established, the *Stowers* claim would have been effective without the assignment. And nevertheless, the Policy was assignable under § 365(f) because CNA and Actitech still owed material duties to each other under the Policy when the bankruptcy was filed, making it executory.

For these reasons, as more fully described below, this Court should reverse and remand.

## STATEMENT OF THE CASE

### A. Factual Background

Appellee CNA Insurance Companies, d/b/a Continental Casualty Company ("CNA") issued a claims-made policy (the "Policy") to, among

others, Actitech, LP ("Actitech"), providing coverage from July 24, 2017, through July 24, 2018. ROA.134, 172.

On or about November 3, 2017, JRjr33, Inc. ("JRjr33") and Agel Enterprises, LLC ("Agel") filed suit against Actitech (the "Underlying Suit"), alleging breaches of fiduciary duty, other torts, and violations of the Texas usury statute. ROA.81. Regarding the claim for usury (the "Usury Claim"), they alleged that Actitech had extended credit terms for certain deliveries of manufactured goods and that the effective rate of the payments owed on top of the amounts forborne exceeded 100% effective annual interest. *Id.* JRjr33 filed for Chapter 7 bankruptcy in 2018, *see In re JRjr33, Inc.*, No. 18-32123 (Bankr. N.D. Tex.), wiping out the entire enterprise value of the company—in no small measure due to Actitech's actions.

On or about June 7, 2021, Agel and JRjr33 sent a *Stowers* demand offering to settle all claims, pled and unpled, known and unknown, in exchange for tender of policy limits. ROA.82. The demand laid out in detail that the Policy covered all damages, including usury, and cited considerable evidence to that effect. *See* ROA.82-83. CNA never responded to the *Stowers* demand. ROA.82. A few months later, on or about October

26, 2021, the state district court entered a preliminary injunction in favor of JRjr33 and Agel, confirming the theories of liability and damages alleged in the petition and the *Stowers* demand. *See* ROA.81-82. CNA never attempted to settle the claim.

On or about January 10, 2022, Actitech filed for Chapter 11 bankruptcy in the Northern District of Texas. ROA.82. Immediately thereafter, Actitech removed the Underlying Suit to the bankruptcy court as an adversary proceeding. *Id.*

On or about July 20, 2022, Actitech settled the Underlying Suit with the plaintiffs (the "Settlement"), agreeing to, among other things, (i) pay the plaintiffs $2.75 million to release all claims, whether known or unknown, pled or unpled, and (ii) assign the *Stowers* claim and all rights, interest, and claims under the Policy to JRjr33, Inc. ROA.84. Actitech filed a motion to approve the Settlement agreement, including the assignments, which the bankruptcy court approved on October 7, 2022, incorporating the Settlement agreement by reference. *Id.* Actitech timely paid the $2.75 million settlement amount after approval to effectuate the Settlement agreement.

**B. Procedural History**

In 2017, Appellant Robert Yaquinto, in his capacity as Chapter 7 Trustee of JRjr33 (the "Trustee") and as assignee of Actitech, commenced this adversary proceeding against CNA on October 22, 2023. *See* ROA.79-91. The complaint alleges, among other things, that CNA breached (i) its duty of care by failing to pay the *Stowers* demand, and (ii) the Policy by failing to tender a full and complete defense and by failing to pay the loss up to policy limits. *See* ROA.84-89. CNA answered and asserted affirmative defenses on December 29, 2023, which included defenses alleging that Actitech breached continuing material obligations under the Policy during the pendency of the Underlying Suit. *See* ROA.92-105.

On April 29, 2024, CNA filed a motion for judgment on the pleadings under Rule 12(c). *See* ROA.105-130. The Trustee responded on May 30, 2024, *see* ROA.198-222, and CNA replied on June 13, 2024, *see* ROA.248-267. The bankruptcy court heard oral argument on the motion to dismiss on August 15, 2024. *See* ROA.281-347.

The bankruptcy court granted the motion on October 24, 2024. *See* ROA.42-54. It did so on two bases: (i) the case below was solely for "penalties" excluded from the definition of "Loss" under the Policy, and

therefore CNA did not breach the Policy when it failed to pay the Loss; and (ii) the Policy was not assignable because it contained a non-assignability clause and was not an executory contract under the Bankruptcy Code.

The Trustee timely appealed to the district court on October 30, 2024. ROA.39-42. After briefing, the district court affirmed the bankruptcy court's order on November 18, 2025. ROA.613-619. The Trustee timely appealed to this Court the next day. ROA.620-621.

## SUMMARY OF THE ARGUMENT

Dismissal was granted on two bases: (i) there is no coverage under the "penalties" exclusion in the Policy, and (ii) the Policy was not "executory" at the time of the assignment and, therefore, could not be assigned under § 365(f) of the Bankruptcy Code.

The decision should be reversed for several key reasons.

*First*, the wrong standards were applied to the coverage issue. Under Texas law, it is not clear that any amount sought under the usury statute constitutes "penalties" excluded by the Policy. A "settlement" is expressly covered as a "Loss," and the exclusion from the definition of a "Loss" for any "civil or criminal fines, penalties, taxes, sanctions or forfeitures imposed on an insured," ROA.151-152, is subject to the *noscitur a sociis* interpretive canon. Correctly applied, the canon compels the reading that the exclusion only applies to penalties payable to a government authority, not those payable to a private litigant.

Setting that aside, Texas law holds that a policy exclusion must be strictly construed against the insurer, and if the insured has a reasonable construction, that construction prevails even if the insurer posits a more reasonable alternative.

10

Here, the Policy was construed in the *insurer*'s favor with no explanation for why the Trustee's interpretation was unreasonable. The Trustee's interpretation is reasonable because:

- The plain text of the Policy controls;
- The plain text of the Policy shows that it covers "settlements" and no "penalties" were "imposed" on the insured in the Settlement;

- In a similar case, this Court applied the *noscitur a sociis* canon, holding that the exclusion of "fines, penalties or taxes" from coverage referred only to moneys paid to the government and not to a private litigant—here, *noscitur a sociis* compels the same interpretation. "[F]ines, penalties, taxes, sanctions or forfeitures imposed on an Insured" refers to sums only payable to the government, this action was not for any moneys payable to the government, therefore, the exclusion does not apply.

Because the Trustee's construction of the Policy language is at least reasonable (if not objectively correct), it should have controlled. If this Court finds coverage, then reversing dismissal of the *Stowers* claim is automatic because it is a tort claim not subject to the Policy's non-assignability language.

*Second*, under Texas law, the duty to indemnify is predicated on the *facts* of the underlying suit, not the pleadings. Here, the Policy specifically recognizes that Losses can include covered and noncovered claims and that

11

CNA will pay for covered Losses after an apportionment process. The operative complaint noted that the Settlement paid "$2,750,000 in damages" and that Actitech had incurred defense costs and fees that were also covered. *See* ROA.436. Thus, the Settlement applied to and released more than just claims for any purported penalties—it released claims for damages, attorney's fees, and all other claims against CNA.

So even if the Policy does not cover a portion of the claims released in the Settlement the other released claims for damages and attorney's fees were certainly covered, and trial is necessary to decide the apportionment. The Trustee therefore should have had the opportunity to present that evidence to apportion the Loss per the Policy's terms.

*Third*, the case should not have been dismissed on non-assignability grounds. The question turns on whether *this* Policy imposes post-notification obligations on an insured as a material obligation in exchange for the duty to indemnify, and whether that rendered the Policy "executory" at the time the bankruptcy was filed. Neither the bankruptcy court nor the district court considered whether *this* Policy creates material obligations on the part of both parties after a claim is noticed—it does, including on the part of the insured which is identified as material and

which CNA pleaded in its affirmative defenses. The cases relied on to the contrary are inapposite, as they rest merely on the general conclusions of other courts and do not (i) evaluate the specific policies before them, (ii) follow state law to determine materiality as circuit precedent requires, and (iii) even purport to facially involve policies with material post-notification obligations.

*Finally*, dismissal without a single opportunity to amend. Given the liberality of amendment, any deficiency in the pleadings should have afforded the Trustee at least one opportunity to cure, whether to clarify the bases or add to the specific underlying matters.

## STANDARD OF REVIEW

In a bankruptcy case, this Court reviews decisions of "the district court by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *Crowell v. Theodore Bender Acct. (In re Crowell)*, 138 F.3d 1031, 1033 (5th Cir. 1998); *see Lopez v. Viegelahn (In re Lopez)*, 897 F.3d 663, 668 (5th Cir. 2018) ("'Acting as a "second review court,"' [this Court] review[s] a bankruptcy court's legal conclusions *de novo* and its findings of fact for clear error.").

Rule 12(c) dismissals are reviewed de novo, and the standard of review applied is the same "as that applied to Rule 12(b)(6)." *Vardeman v. City of Houston*, 55 F.4th 1045, 1049 (5th Cir. 2022); *see Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) ("Rule 12(b)(6) motions are 'viewed with disfavor and rarely granted.'" (citation omitted)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Because motions to dismiss "test[] the sufficiency of the pleadings" rather than "the merits of the case," *George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022), all well-pleaded facts are accepted "as true and viewed in the light most favorable to the plaintiffs," *Espinal v. City of Houston*, 96 F.4th 741, 745 (5th Cir. 2024).

## ARGUMENT

### I.    The Settlement Was Not Excluded as a Loss Covered by the Policy's Plain Text

The Trustee contends that CNA's failure to tender a defense, pay the *Stowers* demand,[1] or otherwise attempt to settle within policy limits made

---

[1] *Stowers* refers to the negligence claim recognized in *G. A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved).

CNA liable to its insured for damages and losses in excess of policy limits. *See* ROA.82, 84-85. CNA's sole contention to the contrary was that the Settlement was for a usury claim, which it alleged is *per se* excluded from the definition of a "Loss" under the Policy's exclusion of "penalties."[2] *See* ROA.100.

For the reasons that follow, the Court should reverse in the Trustee's favor on this issue.

### a. The Incorrect Standard Was Applied When Construing the Policy and Deciding Coverage for the Duty to Indemnify

If an insured's reading of a policy exclusion is reasonable, it wins the day. *See State Farm Fire & Cas. Co. v. Reed*, 873 S.W.2d 698, 701 (Tex. 1993).[3] To determine whether the Usury Claim is a Loss under the Policy, the text of the Policy—"the alpha and the omega of the interpretive

---

[2] In its motion before the bankruptcy court, CNA did not distinguish between the duty to defend and its duty to indemnify. ROA.112. The Trustee reserves all rights to advance any arguments concerning the duties to defend and indemnify unrelated to the loss-exclusion argument CNA advanced in its motion. *Princeton Excess & Surplus Lines Ins. Co. v. A.H.D. Hous., Inc.*, 84 F.4th 274, 281 (5th Cir. 2023) (applying Texas law) (recognizing these duties as separate and distinct).

[3] The parties agree that Texas law applies to the construction of the policy language at issue here. Therefore, "the substantive law of Texas according to the general principles of contract interpretation articulated by the Texas Supreme Court" governs. *Elmen Holdings, L.L.C. v. Martin Marietta Materials, Inc.*, 86 F.4th 667, 675 (5th Cir. 2023) (brackets and ellipsis omitted) (quoting *McLane Foodservice, Inc. v. Table Rock Rests., L.L.C.*, 736 F.3d 375, 377 (5th Cir. 2013)).

process"—must be considered. *See Bankdirect Cap. Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017) (Willett, J.). The Policy language must be construed "as a whole." *Bluestone Nat. Res. II, LLC v. Randle*, 620 S.W.3d 380, 387 (Tex. 2021).

Importantly, policies "are read liberally in favor of the insured," *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008) (applying Texas law), and "[e]xceptions [or] limitations in an insurance policy are strictly construed against the insurer," *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir. 1996) (applying Texas law). The immediate "inquiry is whether the construction advanced by [the insured] is a reasonable interpretation"— the insurer's construction cannot prevail even if it is "more reasonable" than the insured's. *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991).

### b. The Term "Penalties . . . Imposed" Reasonably Means Statutory Sums Paid to a Government Entity

Nowhere in the Policy are usury claims excluded *per se*. Rather, CNA focuses on the term "civil penalties," suggesting that because usury claims *can* result in civil penalties, any such penalties are excluded under the Policy.

16

Yet the Policy defines a covered Loss as:

> [D]amages, settlements, judgments . . . and Defense Costs for which the Insured is legally obligated to pay on account of a covered Claim . . . .

ROA.151. The Policy then excludes certain types of amounts that CNA becomes "legally obligated to pay on account of a covered Claim":

> [C]ivil or criminal fines, penalties, taxes, sanctions or forfeitures imposed on an Insured . . . , other than those civil fines or penalties imposed under 42 USC 1320d-5(a) of the Health Insurance Portability and Accountability Act of 1996 [HIPAA] . . . .

ROA.151-152 (the "Exclusion").

The Policy does not define "penalties." Beginning with the dictionary, as Texas law requires, *Sw. Airlines Co. v. Liberty Ins. Underwriters, Inc.*, 90 F.4th 847, 852 (5th Cir. 2024), a penalty is a "[p]unishment imposed on a wrongdoer, usu[ally] in the form of imprisonment or fine; esp[ecially], a sum of money exacted as punishment for either a wrong to the state or a civil wrong," *Penalty*, BLACK'S LAW DICTIONARY (12th ed. 2024).

Of course, the dictionary alone does not resolve the interpretive issue. *See Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 35 (Tex. 2017). Because the word "penalties" falls within a list of terms in the Exclusion, the *noscitur a sociis* canon of

17

construction helps construe its meaning. *See Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 61 (Tex. 2015).

*Noscitur a sociis* "instructs that 'particular words or phrases' should be understood 'in relation to the words or phrases surrounding them.'" *Van Loon v. U.S. Dep't of the Treasury*, 122 F.4th 549, 566 (5th Cir. 2024) (quoting *United States v. Koutsostamatis*, 956 F.3d 301, 307 n.2 (5th Cir. 2020)); *see* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 195 (2012). When applying *noscitur a sociis*, the "most general quality" common to the group of words should be "the focus" of the inquiry—"the least common denominator, so to speak—relevant to the context." *Crocker v. Navient Sols., L.L.C. (In re Crocker)*, 941 F.3d 206, 219 (5th Cir. 2019) (quoting SCALIA & GARNER, *supra*, at 196).

Here, the terms in the list with "penalties"—fines, taxes, sanctions, and forfeitures—are defined as:

- "Fine" – "A pecuniary criminal punishment or civil penalty payable to the public treasury." *Fine*, BLACK'S LAW DICTIONARY (12th ed. 2024).
- "Tax" – "[A] charge, usu[ally] monetary, imposed by the government on persons, entities, transactions, or property

18

to yield public revenue." *Tax*, BLACK'S LAW DICTIONARY (12th ed. 2024).

- "Sanction" – "A penalty or coercive measure that results from failure to comply with a law, rule, or order." *Sanction*, BLACK'S LAW DICTIONARY (12th ed. 2024).

- "Forfeiture" – "[L]oss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty." *Forfeiture*, BLACK'S LAW DICTIONARY (12th ed. 2024).

Critically, the first two terms—fines and taxes—are payable *only* to the government. Equally notable, the exceptions to the Exclusion—"civil fines or penalties imposed under 42 USC 1320d-5(a) of [HIPAA]," ROA.151—which are added back into coverage—are also only payable solely to the government in an action by the Attorney General. *See* 42 U.S.C. §§ 1320a-7a(f), 1320d-5(a); *see also Acara v. Banks*, 470 F.3d 569, 571–72 (5th Cir. 2006) (holding that HIPAA does not create a private cause of action). And while penalties, sanctions, and forfeitures are generally payable to governments, they are, in theory, also payable to private litigants.

Therefore, the common denominator of all these terms is that they are awards payable to a government entity, and therefore the Exclusion does not apply to any remedy payable to a private litigant. Thus, even if

19

penalties were at issue in the Underlying Suit, they are not the sort of penalties excluded by the Policy.

This Court's decision in *Flagship Credit Corp. v. Indian Harbor Insurance Co.*, a case involving strikingly similar policy language, cements this interpretation of the Policy as correct and reasonable. 481 F. App'x 907 (5th Cir. 2012) (per curiam) (applying Texas law). There, "fines, penalties or taxes imposed by law" were excluded from the insurance contract's definition of loss. *Id.* at 909. At issue were "statutory minimum damages" under the Texas Uniform Commercial Code sought by a private litigant, and whether they constituted "penalties" excluded under the policy. *Id.* at 910. This Court held that such a remedy, though potentially a civil penalty under the word's broadest definition, was not a penalty under the *policy*'s plain text because the other terms in the exclusion—fines and taxes—are only payable to the government, whereas a penalty could be payable to either the government or to a private litigant. *Id.* at 911–12. A penalty under the policy therefore referred only to an award payable to the government, and statutory awards sought by the private plaintiff accordingly were not excluded as penalties. *Id.*

Similarly, in *Evanston Insurance Co. v. Gene by Gene, Ltd.*, the

district court addressed a coverage dispute relating to several insurance policies, including a professional liability policy. *See* 155 F. Supp. 3d 706 (S.D. Tex. 2016). It held that the exclusion of "[f]ines, penalties, and taxes" from the liability policy "are 'limited to payments made to the government' and do not include statutory damages that make up the monetary portion of a judgment." *Id.* at 711 (quoting *Flagship*, 481 F. App'x at 912). The court concluded that "actual and statutory damages" sought were covered "damages" and not excluded as "penalties" under the policy. *Id.*

The same logic applies here. Though not every penalty, sanction, or forfeiture is payable to a private party, "fines, penalties, taxes, sanctions or forfeitures" are all payable to a government—that is the least common denominator. *See Flagship*, 481 F. App'x at 911 ("The common meaning, though not the exclusive meaning, of all th[e] terms involves a payment to the government.").

The Trustee does not concede that the usury damages were "penalties" under Texas law (they are, in fact, statutory damages). But even if they are, the only viable interpretation of the Policy language is that moneys claimed in *this* case—payable to a private litigant—were not

21

"penalties" falling within the Exclusion. Particularly given *Flagship*, the Trustee's reading of the Exclusion is reasonable.

### c. The Trustee's Reading Prevails Even in the Face of an Alternative Reading

CNA's construction of the Exclusion is improper because, among other reasons, it runs headlong into the *noscitur a sociis* canon. But even if CNA's interpretation of the Policy were reasonable, applicable Texas law nevertheless compels reversal. "When the language of an insurance policy 'is susceptible to more than one construction, it should be construed strictly against the insurer and liberally in favor of the insured.'" *Gonzalez v. Mid-Continent Cas. Co.*, 969 F.3d 554, 557 (5th Cir. 2020) (citation omitted) (applying Texas law). "'This widely followed rule is an outgrowth of the general principle that uncertain contractual language is construed against the party selecting that language,' and is 'justified by the special relationship between insurers and insureds arising from the parties' unequal bargaining power.'" *RSUI Indem. Co. v. Lynd Co.*, 466 S.W.3d 113, 118–19 (Tex. 2015) (quoting *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 n.1 (Tex. 1998)); *see In re Horizon*, 470 S.W.3d 452, 455 n.3 (Tex. 2015) ("The doctrine of *contra proferentem* . . . requires that courts

22

favor an insured's interpretation of an insurance policy if there is more than one reasonable interpretation.").

At best, the Policy Exclusion language at issue is susceptible to two reasonable interpretations—the Trustee's and CNA's—making it ambiguous. *See Pan Am Equities, Inc. v. Lexington Ins. Co.*, 959 F.3d 671, 674 (5th Cir. 2020) (applying Texas law) ("A policy is only ambiguous if, giving effect to all provisions, its language is 'subject to two or more reasonable interpretations.'" (citation omitted)). Under well-established Texas law, the Exclusion must be "strictly construed against the insurer," *Canutillo Indep. Sch. Dist.*, 99 F.3d at 701, and the reasonable interpretation of the Policy "favored by the insured"—here, the Trustee— must be adopted, *Nautilus Ins. Co. v. Country Oaks Apartments Ltd.*, 566 F.3d 452, 455 (5th Cir. 2009). *See Kinsale Ins. Co. v. Flyin' Diesel Performance*, 99 F.4th 821, 827 (5th Cir. 2024) ("Texas courts construe the meaning of an ambiguous insurance contract in favor of the insured."). This is true even if the Court considers CNA's interpretation "more

23

reasonable or a more accurate reflection of the parties' intent." *Nat'l Union Fire*, 811 S.W.2d at 555.

### d. The Exclusion Language Was Erroneously Construed

The bankruptcy court and the district court determined that the Exclusion removed relief under the usury statute from coverage under the Policy. *See* ROA.10-13, 615-618. This was error for several reasons.

*First*, it is incorrect as a matter of law *noscitur a sociis* only applies *after* the court determines a term is ambiguous. *See, e.g.*, *Lagos v. United States*, 584 U.S. 577, 581–82 (2018) (applying *noscitur a sociis* to determine plain meaning in the first instance); *United States Fid. & Guar. Co. v. Goudeau*, 272 S.W.3d 603, 605 (Tex. 2008) (same). *Noscitur a sociis* is a contextual canon that illuminates which meaning of a word or phrase the drafters intended. *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 332 (3d Cir. 2022). If textual ambiguity were a precondition to applying the canon, *noscitur a sociis*—or any contextual canon for that matter—could be avoided by construing each word in isolation. That is not how textual interpretation works. *See Austin Tr. Co. v. Houren*, 664 S.W.3d 35, 42 (Tex. 2023) ("Contract terms cannot be viewed in isolation . . . ."); *see also Tasacom Real Est., LLC v. Associated Indus. Ins. Co.*, No. 3:23-CV-1687,

24

2024 WL 3635519, at *2 n.13 (N.D. Tex. June 18, 2024) (warning against strict constructionism in textual interpretation).

*Second*, the bankruptcy court and the district court misapplied *noscitur a sociis* by allowing a majority of terms to govern and failing to look for a common quality among *all* the words. *See* ROA.50-51 (explaining that "no majority exists to govern the meaning of all terms"); ROA.616. There is no authority cited for this premise, and this lens of the canon is simply incorrect. To the contrary, the Supreme Court in *Lagos v. United States* rejected that very argument.

There, the Court wrestled with three words in a federal statute— "prosecution," "investigation," and "proceedings." *See* 584 U.S. at 580–81. The Supreme Court unanimously held that because "prosecution" is solely a government act in the criminal sphere, the additional terms "investigation" and "proceedings"—which could be conducted by the government or a private party in a civil case—were likewise limited in context to government criminal investigations and ensuing proceedings. *Id.* at 581. Unlike the bankruptcy court and the district court, the Supreme Court did not apply a majority-rules version of *noscitur a sociis*—it held that a *single* term out of the three in the list necessarily narrowed the

contextual meaning of all other related terms. *See id.* at 581–82; *accord Spencer v. World Vision, Inc.*, 633 F.3d 723, 743 (9th Cir. 2011) (Kleinfeld, J., concurring) ("Fair application of *noscitur a sociis* requires us to find something in common among all the associated words and phrases, not just some of them.").

*Third,* the addition of the terms "civil or criminal" does not render the exclusion of usury damages plain and unambiguous. *See* ROA.49-50. As *Flagship* held,[4] civil penalties can be paid to a government authority. 481 F. App'x at 911. The issue here is whether "penalties" in the Policy Exclusion refers to something payable to the government or to a private party—whether penalties are civil or criminal is of no moment.

In fact, *Flagship* presupposed that the definition of "penalties" inherently encompassed both criminal penalties payable to the government and civil penalties payable to the government or to a private litigant. *Id.*[5] Thus, *Flagship* did not construe the term "penalties" in the

---

[4] Though the district court found *Flagship* inapposite, it is not clear why the language at issue in the case is "notably distinct" from that of the Exclusion. *See* ROA.617. While it is not verbatim the same, the language is materially similar, and the fulsome analysis in *Flagship* applies here.

[5] Likewise, in *FDIC v. Mijalis*, this Court addressed whether the FDIC's imposition of civil penalties was excluded from an insurance policy that merely excluded "penalties." 15 F.3d 1314, 1316 (5th Cir. 1994). The term "penalties" standing on its own was determined to refer to civil or criminal penalties imposed by the

26

policy at issue as solely meaning "criminal penalties," where the addition of the term "civil" would or could alter the conclusion here.

Because the term "penalties" was in a list alongside "taxes" and "fines," among other words, under *noscitur a sociis*, only penalties payable to the government were part of the Exclusion. *Id.* Though the Exclusion language here differs mildly from that in *Flagship*, the textual analysis yields the same result.

## II. Even If CNA's Reading of "Penalties" Were Correct, a Fact Question Remained That Could Not Be Decided at the Pleading Stage

Even if the Court were to conclude that the Underlying Suit involved excluded penalties to some extent, that is not the end of the story. The Policy covers "damages, settlements, . . . [and] costs of defense" but excludes "penalties . . . imposed on an insured." ROA.151. Deciding that the entire "Loss" was comprised of excluded "penalties" without considering a full evidentiary record was error.

The Policy recognizes that sometimes a "Claim" may involve covered and noncovered losses. *See* ROA.144. In such circumstances, CNA agreed

---

government, and therefore civil penalties imposed by and payable to the FDIC were still "penalties." *Id.* at 1333–34.

to pay (i) "one hundred percent (100%) of reasonable and necessary Defense Costs incurred by such Insured from such Claim," and (ii) "all remaining loss incurred by such Insured from such Claim[] allocated between covered Loss and uncovered Loss based upon the relative legal exposures of the parties to such matters." *Id.* In other words, even if this Court finds "penalties" are excluded, it is still the case that 100% of the costs of defense incurred by the insured were a covered Loss. And at least a percentage of the Settlement payments were also covered to the extent they compensated the Trustee for non-penalty damages and fees.

Here, the Underlying Suit lasted several years and contained various claims and bases for damages and attorney's fees separate from the relief provided under the usury statute, during which time the insured also incurred "Defense Costs." Texas law allows claims for damages and attorney's fees separate and apart from statutory damages. While the Settlement required payment of damages, it did not impose any penalties. And it released more than the Usury Claim—it released *all* claims for damages and attorney's fees, among others.[6] Accordingly, nothing in the

---

[6] This Court can take judicial notice of the bankruptcy court's order approving the settlement, *see* FED. R. EVID. 201, which incorporated the Settlement agreement by reference, releasing "any and all claims and causes of actions, losses, damages,

pleadings controverts that the insurer is liable for, at a minimum, *some* amount of coverage for the covered losses—Defense Costs and the Settlement—in an amount that should be decided at trial with actual evidence under the terms of the Policy.

Thus, it was error to decide the entire question on the pleadings. The burden is on CNA to prove facts with proper evidence that give rise to its exclusion. *See* TEX. INS. CODE § 554.002 ("Language of exclusion in the contract or an exception to coverage claimed by the insurer . . . constitutes an avoidance or an affirmative defense."); *Nat'l Union Fire Ins. Co. v. Puget Plastics Corp.*, 532 F.3d 398, 404 (5th Cir. 2008) (applying Texas law) ("[T]he insurer bears the burden to prove an exclusion precludes coverage." (citation omitted)). The Supreme Court of Texas has explained that where the underlying lawsuit resulted in a settlement and no facts were therefore "established" at trial, it is a *fact* question for trial whether the settlement was covered in whole or in part by the policy:

> As with any other contract, breach or compliance with the terms of an insurance policy is determined not by

---

liabilities and demands of any kind whatsoever in law or in equity, whether known or unknown, suspected or unsuspected, contingent or fixed, including attorney's fees and costs, that any of the Plaintiff Releasors now have, have had or in the future may have against any of the Defendant Releasees." Dkts. 103-2, 127, *In re Actitech, LP*, No. 22-30049 (Bankr. N.D. Tex.).

pleadings, but by proof . . . . The insurer's duty to indemnify depends on the facts proven and whether the damages caused by the actions or omissions proven are covered by the terms of the policy. Evidence is usually necessary in the coverage litigation to establish or refute an insurer's duty to indemnify. *This is especially true when the underlying liability dispute is resolved before a trial on the merits and there was no opportunity to develop the evidence . . . .*

*D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 744 (Tex. 2009) (emphasis added); *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 656 (Tex. 2009) ("[F]acts actually established in the underlying suit control the duty to indemnify").

Here, it is undisputed that the Underlying Suit settled before trial. Pleadings for damages were contemplated to be amended given the degree of losses incurred by the bankruptcy estate (and amendment should have been allowed to please the same, as well as attach the Settlement agreement).

Thus, The underlying facts have not been established in these proceedings (or elsewhere) via evidence or otherwise. Indeed, the bankruptcy court, for example, ignored the fact that damages and attorney's fees were requested in the Underlying Suit, not only in the live

30

petition but also in prior ones (for which Defense Costs were incurred). It did not consider that proof of the same would have been offered had the Underlying Suit gone to trial because, among other things, Actitech's actions had caused damages and "pushed [JRjr33] into bankruptcy" and that such proof would be relevant in a trial over the coverage dispute. *See* ROA.324-325.

Accordingly, the Trustee should have been afforded the opportunity to "present evidence at trial regarding facts necessary to determine coverage that were not adjudicated in the underlying case." *Nat'l Union Fire*, 532 F.3d at 404. The dismissal wrongfully overlooked and vitiated that right. As such, reversal for that determination is required regardless of whether the Policy excluded penalties *per se*.

## III. If This Court Finds the Coverage Determination Was Erroneously Made, the *Stowers* Claim Survives

The bases for dismissing the two pleaded theories of liability, *Stowers* and breach of contract, were not articulated in the decisions under review. Understandably, this could be implied to mean that the *Stowers* claim was dismissed because there was no coverage *and* because of the Policy's non-assignability language.

But the *Stowers* claim is unaffected by the non-assignability provision for several reasons. For one thing, the Policy states, "Assignment of interest under this Policy shall not bind the Insurer unless its consent is endorsed to this Policy." ROA.138. Here, the term "[a]ssignment of interest" is facially ambiguous. It is not the "assignment of" "an" or "any" or the "insured's" interest under the policy. Had CNA meant "no interest under this Policy may be assigned," it could have said so. Instead, it began with the direct object—"interest." Notably, the Policy provides for the payment of interest in the definition of Loss, ROA.151, and elsewhere, ROA.162. The non-assignment provision could simply mean that such interest awardable "under this Policy" is not assignable. Nowhere in the Policy is "interest" used to denote the insured's rights in or under the Policy, and therefore, the canon of consistent usage precludes the insurer's interpretation of the term "interest" in the assignment provision.

Even assuming *arguendo* that the anti-assignment provision is broad enough to reach the insured's "interest"—that is, *rights*—under the Policy, it still does not reach the *Stowers* claim. A *Stowers* claim is a common-law tort claim, not a right "under the Policy." *See Ranger Cnty. Mut. Ins. Co. v. Guin*, 723 S.W.2d 656, 660 (Tex. 1987) (holding that *Stowers* recognized

32

insurers' extra contractual duty of care that includes "investigation, preparation for defense of the lawsuit, trial of the case and reasonable attempts to settle" irrespective of the policy language).

A *Stowers* claim accrues once the insured actually incurs liability in excess of policy limits. *Linkenhoger v. American Fid. & Cas. Co.*, 260 S.W.2d 884, 887 (Tex. 1953) (holding that the insured's *Stowers* claim did not accrue until liability was finally determined). The damages sought for a *Stowers* violation are of a completely different character and scope than a breach-of-contract claim. *Ranger*, 723 S.W.2d at 660 (noting that *Stowers* is an "independent tort" separate from any contract claim, one "for which an action for damages will lie"). Once an insured incurs liability in excess of policy limits, it may seek *all* its losses as damages against the insurer regardless of any contract limit and may also seek exemplary damages (which is not a contract remedy) for breach of the *Stowers* duty. *Id.* (affirming jury verdict awarding exemplary damages for breach of *Stowers* duty).

Moreover, even if there were a contrary reading of the anti-assignment provision, that reading cannot carry the day. CNA controlled the drafting of the Policy. Thus, whether the Policy's assignment language

33

includes a *Stowers* claim should be resolved in favor of the insured's right to assign the claim as part of the Settlement—which could have been avoided had CNA not breached its *Stowers* duty in the first place. *See Canutillo Indep. Sch. Dist.*, 99 F.3d at 701 ("[L]imitations in an insurance policy are strictly construed against the insurer.").

The only case to analyze this question has held that *Stowers* claims are not subject to non-assignability clauses. *See Berkley Reg'l Ins. Co. v. Phila. Indem. Ins. Co.*, No. 10-CV-362, 2011 WL 9879170, at *7 (W.D. Tex. Apr. 27, 2011) (holding that "the policy's anti-assignment clause does not extend to the [insured's] *Stowers* rights" because "an insured's *Stowers* rights do not arise under contract . . . and . . . is not a right or duty 'under' the insurance," and to the extent there is any ambiguity as to assignability, "the Court is obligated to construe the [assignment language in the] policy against [insurer] and in favor of [insured]"), *vacated and remanded on other grounds*, 690 F.3d 342 (5th Cir. 2012).

Accordingly, if this Court holds that it was error to dismiss the case for lack of coverage in whole or in part, the *Stowers* claim, at a minimum,

34

automatically survives irrespective of the Policy's assignability.

## IV. The Policy Is an Executory Contract, and Therefore Assignable, Under § 365(f) of the Bankruptcy Code

The Policy contains an anti-assignment provision. *See* ROA.138. It is far from clear what the provision means, indicating that it should be construed in favor of assignability. *See Gore Design*, 538 F.3d at 369. CNA drafted the Policy and limited the "Assignment of interest" without specifying what that means. The Trustee contends that that is enough basis to reject the non-assignability argument writ large. *Canutillo Indep. Sch. Dist.*, 99 F.3d at 701 ("[L]imitations in an insurance policy are strictly construed against the insurer.").

Nonetheless, Actitech assigned all rights in the Policy to JRjr33, which were approved under the Bankruptcy Code. ROA.84. The Trustee contends that even if the anti-assignment language applies, the Policy was an executory contract when bankruptcy was filed, meaning that 11 U.S.C. § 365(f) overrode the Policy's anti-assignment provision. *See* ROA.101.

A debtor like Actitech may "assign its rights and obligations under an executory contract to others." *Anytime Fitness, L.L.C. v. Thornhill Bros. Fitness, L.L.C. (In re Thornhill Bros. Fitness, L.L.C.)*, 85 F.4th 321, 325 (5th Cir. 2023) (citing 11 U.S.C. § 365(f)(1)). The Bankruptcy Code does not

define "executory contract," but the Supreme Court defines it as a contract under which "performance remains due to some extent on both sides." *Mission Prod. Holdings v. Tempnology*, LLC, 587 U.S. 370, 373 (2019) (quoting *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 522 n.6 (1984)).

Elaborating on the Supreme Court's definition, this Court characterizes a contract as executory "if [(1)] 'performance remains due to some extent on both sides' and [(2)] if 'at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party.'" *RPD Holdings, L.L.C. v. Tech Pharm. Servs. (In re Provider Meds, L.L.C.)*, 907 F.3d 845, 851 (5th Cir. 2018) (quoting *Phx. Expl. v. Yaquinto (In re Murexco Petrol.)*, 15 F.3d 60, 62–63 (5th Cir. 1994) (per curiam)). Critically, whether a duty exists and has been breached turns on applicable *state* law, *see Argonaut Ins. Co. v. Falcon V, L.L.C. (In re Falcon V, L.L.C.)*, 44 F.4th 348, 352 (5th Cir. 2022)—here, Texas law.

Actitech filed for bankruptcy on January 10, 2022. *See* ROA.82. At the time, the parties had obligations under the Policy remaining to be performed. For simplicity, the Trustee focuses on a key obligation for each

36

party.[7] CNA, for instance, remained obligated to pay Actitech for any loss covered by the Policy. *See* ROA.158. Actitech remained obligated under the Policy's cooperation clause to "furnish [CNA] with [updates and] . . . assistance and cooperation as the Insurer may reasonably request." ROA.144. Both are material obligations that render the Policy executory. *See Charter Sch. Sols v. Guideone Mut. Ins. Co.*, 407 F. Supp. 3d 641, 648 (W.D. Tex. 2019) (applying Texas law) ("[A]n insurer that improperly denies coverage breaches its duty to indemnify." (citing *Data Specialties, Inc. v. Transcon. Ins. Co.*, 125 F.3d 909, 911 (5th Cir. 1997))); *Phila. Indem. Ins. Co. v. Stebbins Five Cos.*, No. 3:02-CV-1279, 2002 U.S. Dist. LEXIS 24582, at *18 (N.D. Tex. Dec. 20, 2002) ("It is well established under Texas law that an insured's breach of a cooperation provision relieves an insurer of liability on the policy.").[8]

---

[7] Other remaining obligations include, but are not limited to: the insurer's duty to defend all claims, ROA.143, 167; the insurer's duty to compensate any insured person for their "presence at a trial, hearing, deposition, mediation or arbitration," ROA.142; the insured's duty of retainage, and the insured's duty to notify the insurer of any claim or potential future claim, ROA.143-45.

[8] Curiously, and despite characterizing the Policy as not an executory contract, CNA pleaded other affirmative defenses as material breaches under the Policy. *See, e.g.*, ROA.101 (contending that even if Yaquinto's allegations are true, recovery is unavailable from CNA because the cooperation clause was breached which excuses its duty to indemnify).

Instead of engaging the analysis prescribed by this Court, the sole argument CNA advanced was that "the Policy had already expired on its own terms before Actitech's bankruptcy filing." ROA.124.

This assertion is incorrect because the term "expired" is particularly equivocal. When Actitech filed its bankruptcy petition, only the "Policy Period" had expired—not the Policy in total. The "Policy Period"—the time within which claims were covered—ran from July 24, 2017, through July 24, 2018. ROA.134. The expiration of the Policy Period is not the same thing as the expiration of all continuing rights and duties under the Policy. As discussed above, the Policy imposes continuing obligations on insureds whenever a claim is made against the Policy through the time the litigation is resolved to provide updates, cooperate, and pay the retention amounts. ROA.140, 143-145. To say that these duties are immaterial casts Texas law aside. And nothing in the Policy truncates these post-notification obligations at the expiration of the Policy Period. The Policy even allows the insured to give notice of a claim after the Policy Period expires. ROA.144. Therefore, this Court should reject any false equivalence between the expiration of the Policy Period and the idea that the Policy has become a nullity.

Here, the state-court lawsuit began on November 3, 2017, and a claim was timely made within the Policy period. *See* ROA.81, 84. Once made, there is no doubt that the claim triggered duties under the Policy as to both the insurer and the insured that ran until the litigation was resolved. The litigation remained pending and did not conclude until after Actitech was already in bankruptcy. *See TIG Ins. Co. v. Woodsboro Farmers Coop.*, 117 F.4th 715, 722 (5th Cir. 2024) ("[U]nder Texas law, a duty to indemnify does not accrue until there is a final judgment."). Therefore, unlike the policies in the cases CNA cited, the Policy had not terminated or expired by its own terms—and was thus executory—when the bankruptcy petition was filed.

Finally, the cases[9] cited to support the proposition that the Policy had expired are distinguishable. Whether a contract is executory requires

---

[9] *Columbia Cas. Co. v. Fed. Press Co. (In re Fed. Press Co.)*, 104 B.R. 56, 65–67 (Bankr. N.D. Ind. 1989); *Beloit Liquidating Tr. v. United Ins. Co.*, 287 B.R. 904, 905–06 (N.D. Ill. 2002); *In re CVA Gen. Contractors, Inc.*, 267 B.R. 773, 778–79 (Bankr. W.D. Tex. 2001); *In re Placid Oil Co.*, 72 B.R. 135, 137–39 (Bankr. N.D. Tex. 1987); *Firearms Imp. & Exp. Corp. v. United Capitol Ins. Co. (In re Firearms Imp. & Exp. Corp.)*, 131 B.R. 1009, 1012–14 (Bankr. S.D. Fla. 1991); *In re Fed.-Mogul Glob., Inc.*, 385 B.R. 560, 574–76 (Bankr. D. Del. 2008); *Westchester Surplus Lines Ins. Co. v. Surfside Resort & Suites, Inc. (In re Surfside Resort & Suites, Inc.)*, 344 B.R. 179, 185–87 (Bankr. M.D. Fla. 2006); *In re Greater Kan. City Transp., Inc.*, 71 B.R. 865, 870 (Bankr. D. Kan. 1987), *aff'd sub nom. Guar. Nat'l Ins. Co. v. Greater Kan. City Transp., Inc.*, 90 B.R. 461, 463 (D. Kan. 1988).

reviewing the specific contractual language under applicable state law to determine materiality, for one. *See Falcon*, 44 F.4th at 352; *see also* ROA.124, 258-261 (CNA failing to consider Texas law in its executory-contract analysis).

Here, the proffered bevy of bankruptcy-court opinions were inapposite.[10] They failed to mention specific policy terms or provisions and failed to note the posture of the parties—or even if a claim had been timely filed—and did not consider state law's determination of materiality.[11] The Supreme Court long ago did away with this sort of "federal general common law." *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *see also Aldous v. Darwin Nat'l Assurance Co.*, 851 F.3d 473, 487 (5th Cir. 2017) ("Federal courts are not to make state law, and certainly not 'by analogy' to federal

---

[10] Two cases in particular reveal themselves as even more inapposite: *Placid Oil* is not even a case directly about an insurance contract but rather deals with insurance premium financing. *See* 72 B.R. at 137–39. And in that case the court expressly noted that there was no evidence of a post-notification duty on either side. And the bankruptcy-court decision in *Greater Kansas City Transportation* based its holding solely on the fact that the notice period in policy at issue had expired, without reference to any other aspect of the policies. *See* 71 B.R. at 870. There is no discussion as to what Kansas law is, nor as to any ensuing obligations or whether a claim was timely noticed.

[11] *See* ROA.51-53; *see also* ROA.53 (finding the Policy not to be an executory contract solely because "[t]he majority of courts have found that no material obligation remains if the insured has paid all premiums, and the policy period is no longer in effect because the contract was terminated or expired."). *But see Charter*, 407 F. Supp. 3d at 646–49.

40

law.").

The only case reasonably on point is *Charter School Solutions*. There, the district court held that once a claim is timely made, the policy is executory until resolution of the litigation where there is a continuing duty on the insured's part to participate, update, and pay retention, as well as a concomitant continuing duty to indemnify on the insurer's part. *See Charter*, 407 F. Supp. 3d at 648. Therefore, there can be little doubt that, under Texas law, insureds can materially breach insurance contracts even after fully paying the premiums. *See, e.g.*, *id.*; *Am. Nat'l Cnty. Mut. Ins. Co. v. Medina*, No. 05-16-01062-CV, 2018 WL 4037357, at *2–4 (Tex. App.— Dallas Aug. 22, 2018, no pet.) (mem. op.) (Brown, J.). In sum, the cases that purportedly support CNA's executory-contract argument are factually and legally distinguishable.

*    *    *

"At the time [Actitech] filed for bankruptcy, both [Actitech] and [CNA] had ongoing obligations under the Policy and, pursuant to state law, the failure of either party to complete performance would constitute a material breach, thereby excusing the other party's performance." *Charter Schools*, 407 F. Supp. 3d at 648. Because performance under the Policy

41

remained due to some extent on both sides, the Policy is an executory contract, and therefore fully assignable under 11 U.S.C. § 365(f). *See Provider Meds*, 907 F.3d at 851.

## V.    Amendment Should Have Been Allowed in the Alternative

The Trustee's case was dismissed without even a single opportunity to amend. Leave to amend should be freely given absent "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Although the Trustee believes that amendment is not necessary for the reasons explained above, the Trustee stands ready to clarify the pleadings to cure any deficiency under the liberal pleading standard of the Federal Rules of Civil Procedure. It would not be futile to do so.

By way of proffer, for example, the Trustee could have been granted leave to amend to disclose the anticipated damages that would have been claimed in the Underlying Suit. And notably, after briefing before the bankruptcy court, CNA produced its reservation-of-rights letter originally

sent to its insured. Therein, CNA *failed* to raise any of the bases for denying coverage that it asserted in its 12(c) motion, did not maintain that the usury claim involved civil penalties or that such were excluded by the Policy anywhere, and did not reserve any rights as to coverage based upon the Exclusion language.[12] As well, JRjr33 and Agel stood ready to present John Rochon, Chairman of JRjr33, who would have testified to the damages that Actitech's actions caused JRjr33 because it "pushed [JRjr33] into bankruptcy." ROA.324-325.

The foregoing demonstrates  that amendment would not be futile, and as the Trustee has never had the chance to amend to cure any deficiencies even once, there is no basis to deny leave to the extent that any allegation or proposition referenced herein is deemed necessary yet missing from the complaint.

## CONCLUSION

For these reasons, the Court should reverse and remand for further proceedings.

---

[12] The Trustee did not have the reservation-of-rights letter at the time to include in the original pleading or briefing before the bankruptcy court; however, the Trustee stands willing and ready to lodge the reservation-of-rights letter with the Court for the Court's examination.

Dated:  February 18, 2026            Respectfully submitted,

                                     /s/ Mazin A. Sbaiti
                                     Mazin A. Sbaiti
                                     Griffin S. Rubin
                                     SBAITI & COMPANY PLLC
                                     3102 Maple Avenue, Suite 400
                                     Dallas, Texas 75201
                                     (214) 432-2899
                                     mas@sbaitilaw.com
                                     gsr@sbaitilaw.com

                                     Kevin D. McCullough
                                     ROCHELLE MCCULLOUGH, LLP
                                     325 N. St. Paul Street, Suite 4500
                                     Dallas, Texas 75201
                                     (214) 953-0182
                                     kdm@romclaw.com

                                     *Counsel for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United Court of Appeals for the Fifth Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ *Mazin A. Sbaiti*
Mazin A. Sbaiti

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 8,837 words excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.


Date:  February 18, 2026          */s/ Mazin A. Sbaiti*
                                  Mazin A. Sbaiti